**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re Application of FORENSIC NEWS LLC and SCOTT STEDMAN for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding | Case No.  22-mc-1617 |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'**
**APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND .............................................................................................4

    I.    Forensic News Investigates And Publishes Reports Highlighting Walter
           Soriano's Vast Web Of Connections To Shadowy Figures Implicated In
           Russian Efforts To Interfere In The 2016 U.S. Presidential Election ...........................4

    II.   Soriano Threatens Petitioners With Litigation And Ultimately Sues Them In
           England Despite Their Lack Of Any Connections To That Forum .............................7

    III.  Petitioners Successfully Apply For Discovery From Former USG Employee
           Richard Frankel. ...........................................................................................................10

LEGAL STANDARD .......................................................................................................11

ARGUMENT ....................................................................................................................12

    I.    Petitioners' Application Satisfies The Statutory Requirements For Discovery
           Pursuant To 28 U.S.C. § 1782 .................................................................................12

    II.   The *Intel* Discretionary Factors All Favor Granting Petitioners' Application..............15

CONCLUSION..................................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Accent Delight Int'l Ltd.*,
   791 F. App'x 247 (2d Cir. 2019)........................................................................18

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)..............................................................................14

*In re Application of Gorsoan Ltd. & Gazprombank OJSC*,
   2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014)..................................................16

*In re Application of Patokh Chodiev*,
   2021 WL 3270042 (S.D.N.Y. July 30, 2021)....................................................16

*In re Batbold*,
   2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021)......................................................16

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)..............................................................11, 12, 18

*In re Bloomfield Inv. Res. Corp.*,
   2018 WL 6418421 (E.D.N.Y. Dec. 6, 2018)..............................................15, 16

*In re BNP Paribas Jersey Tr. Corp.*,
   2018 WL 895675 (S.D.N.Y. Feb. 14, 2018).....................................................17

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)................................................................................17

*In re Del Valle Ruiz*,
   342 F. Supp. 3d 448 (S.D.N.Y. Oct. 19, 2018), *aff'd sub nom. In re Del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019)......................................................11

*In re Doosan Heavy Indus. & Constr. Co.*,
   2020 WL 1864903 (E.D.N.Y. Apr. 14, 2020)......................................15, 16, 20

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)..............................................................................13

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995)......................................................................16, 21

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
   27 F.4th 136 (2d Cir. 2022)..............................................................................17

# TABLE OF AUTHORITIES

(continued)

Page(s)

*Gardner v. Kenton Cty. Detention Ctr.*,
  2012 WL 13128768 (E.D. Ky. 2012) ...................................................................... 20

*Goenechea v. Davidoff*,
  2016 WL 560689 (D. Md. Feb. 11, 2016) ............................................................ 3, 19

*Intel Corp v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................................... *passim*

*In re JSC BTA Bank*,
  2021 WL 6111916 (S.D.N.Y. Dec. 27, 2021) ......................................................... 16

*In re Kreke Immobilien*,
  2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by*
  *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ................................................. 17

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
  62 F. Supp. 3d 358 (S.D.N.Y. 2014) ...................................................................... 16

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ......................................................................... *passim*

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
  2008 WL 3884374 (N.D.N.Y Aug. 18, 2008) .......................................................... 17

*Puccio v. Sclafani*,
  2013 WL 4068782 (S.D. Fla. Aug. 12, 2013) .......................................................... 19

*Trout Point Lodge, Ltd. v. Handshoe*,
  729 F.3d 481 (5th Cir. 2003) .................................................................................. 2

*U.S. Commodity Futures Trading Comm'n v. McCrudden*,
  2015 WL 5944229 (E.D.N.Y. Oct. 13, 2015) .......................................................... 19

*In re Vale S.A.*,
  2020 WL 4048669 (S.D.N.Y. July 20, 2020) ......................................................... 16

*Williams ex rel. Williams v. Greenlee*,
  210 F.R.D. 577 (N.D. Tex. 2002) ........................................................................... 20

**Statutes**

28 U.S.C. § 4101 *et. seq.* ........................................................................................ 2

N.Y. Civ. Rights Law § 76-a ..................................................................................... 20

## TABLE OF AUTHORITIES
(continued)

Page(s)

**Other Authorities**

Findings to Pub. L. 111-223, § 2, 124 Stat. 2380 (2010)............................................................2

Stephanie Kirchgaessner, "U.S. Congressman Urges Biden to Ban Six UK
    Lawyers for 'Enabling' Oligarchs," the Guardian, April 19, 2022.........................................9

**Rules**

Fed. R. Civ. P. 26...............................................................................................................18, 19

Fed. R. Civ. P. 30....................................................................................................................19

## INTRODUCTION

Forensic News LLC and its journalist-founder Scott Stedman (together, "Petitioners") seek this Court's leave under 28 U.S.C. § 1782 to take discovery in aid of their defense of a defamation action filed against them in England by British-Israeli "security consultant" Walter Soriano.  *See Soriano v. Forensic News LLC*, Claim No. QB-2020-002450 (the "English Defamation Action").  In the English Defamation Action, Soriano asserts that Mr. Stedman and Forensic News, a long-form investigative journalism platform focused on matters of national security, should be held liable for statements made in a series of articles regarding associations between Soriano and his security consultancy firm, USG Security Limited ("USG"), on the one hand, and core figures associated with alleged Russian interference in the 2016 U.S. presidential election, on the other hand.  Petitioners seek discovery from Aviram Azari, an individual located in this district who worked closely with Soriano for years, and thus has relevant knowledge regarding his associations, including with Russian oligarchs who may have played a role in election interference.  This is Petitioners' second Section 1782 application arising out of the English Defamation Action. Petitioners' first application sought discovery from former FBI agent Richard Frankel, a former employee of USG.  Judge Matsumoto granted that application in April.  *See In re Application of Forensic News LLC, et al.*, No. 22 Misc. 993 (E.D.N.Y. Apr. 4, 2022), ECF No. 11 (Matsumoto, J.).  Petitioners anticipate that Azari's documentary and testimonial evidence will significantly assist them in their efforts to defeat the improper, strategic lawsuit against public participation ("SLAPP") pending against them and to vindicate the Forensic News reporting that is at the heart of that case.

Forensic News' mission is to deliver original long-form journalism focused on national security, espionage, corporate, and political issues.  Walter Soriano is a British-Israeli "security

consultant" with ties to the Russian oligarchy.  Forensic News learned of Soriano when a *Politico* report identified him as a person of interest in the Senate Intelligence Committee's investigation into Russian interference in the 2016 U.S. presidential election.  Forensic News picked up on the *Politico* report and ran with it.  Forensic News and its journalists ultimately discovered and reported on a web of shadowy connections and secretive dealings that were largely forged through USG.  Forensic News' investigations culminated in the publication of multiple news articles about Soriano and his ties to core figures associated with alleged Russian election interference, including Vladimir Putin confidant Oleg Deripaska and other oligarchs.

Although Forensic News is based in the United States, is staffed by American journalists, and reports on issues of concern to the American public (its primary audience), Soriano cracked open the well-worn playbook of foreign oligarchs unwilling to face the crucible of a full and fair American-style press.  He sued Forensic News, Mr. Stedman, and other contributing journalists in England—a jurisdiction where Mr. Stedman has never even visited and which has far less robust speech protections than the United States.  As Congress has observed, such "libel tourism" is intended to "'obstruct[]' the free expression rights of domestic authors and publishers" and "'chill[]' domestic citizens' First Amendment interest in 'receiving information on matters of importance.'"  *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2003) (quoting Findings to Pub. L. 111-223, § 2, 124 Stat. 2380 (2010)).  Congress has ensured that any judgment Soriano procures will ultimately be unenforceable in the United States through the Securing Protection of Our Enduring and Established Constitutional Heritage ("SPEECH") Act of 2010.  That statute broadly renders unenforceable most foreign judgments for defamation or associated claims, including strike suits like Soriano's designed to chill reporting on matters of public concern.  *See, e.g.*, 28 U.S.C. § 4101 *et. seq.*

But even if any judgment against Petitioners will be unenforceable in the United States, the English Defamation Action is ongoing. Petitioners therefore seek discovery from this Court to aid them in their defense. *See Goenechea v. Davidoff*, 2016 WL 560689, at *3 (D. Md. Feb. 11, 2016) (granting Section 1782 application despite possibility that foreign judgment would be unenforceable under the SPEECH Act). The discovery Petitioners seek pertains to two critical components of their defense of the English Defamation Action. *First*, Petitioners can defeat Soriano's claims on the merits if they prove their reporting was truthful and accurate. *Second*, Petitioners will likely have the opportunity to cross-examine Soriano at trial in England, putting his credibility at issue. Any evidence that allows Petitioners to challenge Soriano's credibility plainly aids in Petitioners' defense.

Respondent Azari likely possesses that very evidence. Azari is an Israeli private intelligence veteran who worked closely with Soriano for years. Given his longstanding professional relationship with Soriano, Azari likely has relevant knowledge about Soriano's and USG's activities. Public reporting and confidential sources both indicate that Soriano engaged Azari multiple times to undertake cyber-intelligence and surveillance operations, including several operations for Russian oligarchs. Azari's documents and testimony can therefore corroborate the truth of Forensic News' reporting—corroboration that is critical to Petitioners' defense in the English Defamation Action.

This Court should grant Petitioners' application for two reasons. *First*, this application meets each of the statutory prerequisites articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246–47 (2004). Petitioners are defendants in a foreign action, seek discovery from an individual who resides or is found in this judicial district, and seek discovery for use in a foreign proceeding. Azari currently resides at the Metropolitan Detention Center ("MDC") in

3

Brooklyn, New York, where he is awaiting sentencing on federal cybercrimes. *Second*, each of the discretionary factors articulated in *Intel* favors awarding discovery. *Id.* at 264–65. Azari is not party to the English Defamation Action, the English court is receptive to U.S. judicial assistance, this application does not seek to circumvent any English proof-gathering restrictions, and the discovery sought will not be unduly burdensome. These factors apply exactly the same way they did in Petitioners' recent, successful Section 1782 application. *See In re Application of Forensic News LLC, et al.*, No. 22 Misc. 993, ECF No. 11 at 1. In that case, the Court granted the application in full. Petitioners respectfully ask this Court to do the same.

## FACTUAL BACKGROUND

I.    **Forensic News Investigates And Publishes Reports Highlighting Walter Soriano's Vast Web Of Connections To Shadowy Figures Implicated In Russian Efforts To Interfere In The 2016 U.S. Presidential Election**

Forensic News is an independent news outlet based in the United States that covers national security, political, and legal issues. *See* Declaration of Patrick Doris ("Doris Decl.") ¶ 4. Scott Stedman founded Forensic News in 2019 to provide free access to well-sourced, long-form investigative journalism. *See* Ex. 2 at 1–3.[1] Mr. Stedman is an investigative journalist whose work has been cited in The Washington Post, BBC, CNN, the Guardian, and VICE. *See* Ex. 3 at 1.

Forensic News first became interested in Walter Soriano after he was invited to testify before the U.S. Senate Intelligence Committee about potential Russian interference with the 2016 U.S. presidential election. *See* Ex. 4 at 44; Ex. 5 at 2. Specifically, the Senate Intelligence Committee requested an interview and documents relating to any communications Soriano had with over a dozen individuals and companies, including Russian oligarch Oleg Deripaska. *See*

---

[1]  Citations to "Ex. _" refer to exhibits to the concurrently filed Declaration of Anne Champion.

4

Ex. 4 at 6–7; Ex. 5 at 2.  Soriano reportedly never responded to the Committee's request.  *See*

Ex. 4 at 51.

Forensic News soon began publishing a series of articles about Soriano.  The reporting

was groundbreaking.  Over the course of its reporting series, Forensic News uncovered Soriano's

deep ties to the power centers of the Israeli and Russian governments.  These ties were most

often forged through work Soriano performed through his private security firm, USG.  Ex. 4 at

52.  Through USG, Soriano served as a "key middle man" between Russia's wealthiest oligarchs

and a network of cyber-spies from Israel and elsewhere.  *See* Ex. 4 at 49; Ex. 6 at 2 –3; Stedman

Decl. ¶ 3.  These connections became the focus of Forensic News' reporting.

Forensic News' articles described Soriano's connections to several Russian oligarchs,

including Deripaska and Rybolovlev.  Deripaska is an aluminum magnate who has close ties to

Russian president Vladimir Putin and who was the subject of intense scrutiny for his

involvement in Russia's 2016 election interference activities.  *See* Ex. 4 at 49; *see also* Ex. 7 at

1–4.  On Deripaska's behalf, Soriano was allegedly involved in orchestrating the arrest of Nastya

Rybka, a former romantic partner of Deripaska's who claimed to have audiotapes showing

coordination between the Trump campaign and Russia.  *See* Ex. 4 at 57–58.  As Forensic News

reported, Soriano assisted Deripaska in his efforts to silence Rybka and prevent her from

releasing information.  *See id*.  Rybolovlev, another oligarch, is one of the wealthiest people in

Russia.  *See id*. at 8.  Forensic News reported that Rybolovlev hired Soriano to assist with

multiple legal disputes in and around 2016, including one dispute with Swiss banker and art

dealer Yves Bouvier.  *See id.* at 8–9; *see also* Ex. 8 at 5.  Based on a court filing from Israeli

journalist Ravi Drucker (whom Soriano also sued for libel), Forensic News reported that Soriano

offered Rybolovlev "sophisticated tracking, data collection and data acquisition through various technological means, such as hacking, eavesdropping, and more."  *See* Ex. 4 at 8.

Soriano denies that he ever "provid[ed] private illegal hacking and spying services."  Ex. 15 ¶ 12.6.3.  But as Forensic News reported, Soriano did provide these services—and he did so with the help of cyber-espionage and surveillance firms from Israel and elsewhere.  Ex. 4 at 49–50; Stedman Decl. ¶¶ 3–6.[2]  To make connections with these firms, Soriano often turned to Israeli private detective Aviram Azari.  *See* Stedman Decl. ¶¶ 5–6.  According to reporting by the New York Times, Azari "served in the 1990s in an Israeli police unit that focused on covert surveillance [and] was one of the most sought-after private investigators in Israel."  Ex. 9 at 2.  According to a friend of Azari's, "[h]e was often hired by customers to gather intelligence about their business competitors."  *Id.*  According to three independent, confidential sources, when Deripaska was in search of cyber-intelligence and surveillance services in connection with a dispute he had with Austrian construction company Strabag, Soriano connected him to Azari, as well as cyber-intelligence firm Psy Group, in order to produce those services.  Stedman Decl. ¶ 6.  Soriano did the same when Rybolovlev sought similar services in connection with his dispute with Yves Bouvier.  *Id.*  Multiple confidential sources reveal that Soriano and Azari worked together regularly for over a decade, including on matters for Rybolovlev, Deripaska, and other oligarchs.  *Id.* ¶¶ 3–6.

In September 2019, after flying to the United States for vacation, Azari was arrested and charged with four criminal counts including wire fraud, identity theft, and conspiracy to commit computer hacking.  *See* Ex. 10 at 1, 5–7; *see also* Ex. 11 at 1–2.  Multiple news sources report

---

[2]  Forensic News specifically named OSY Technologies, NSO Group, FloLive, and Circles Bulgaria as several of the cyber-espionage firms connected to Soriano.  *See* Ex. 4 at 49–50, 53, 56–57.  A recent Senate Intelligence Committee report also connects Soriano to the cyber-intelligence firm Psy Group, which Soriano offered to employ on Rybolovlev's behalf in the Bouvier matter.  *See* Ex. 8 at 5; *see also* Stedman Decl. ¶ 6.

that Azari committed these crimes with a New Delhi-based "cyber intelligence services company" called BellTrox InfoTech Services, which has been accused of hacking the devices of lawyers, government officials, businesspeople, and activists worldwide on behalf of private investigators.  *See* Ex. 12 at 2; *see also* Ex. 13 at 1, 4.  BellTrox is also one of the same cyber-espionage firm to whom Azari allegedly connected Soriano.  Stedman Decl. ¶ 5.

On April 21, 2022, Azari pleaded guilty in his criminal case.  *See* Ex. 11 at 5.  He is currently incarcerated and awaiting sentencing at the Metropolitan Detention Center in Brooklyn, New York.  *See* Ex. 14 at 1.

## II.    Soriano Threatens Petitioners With Litigation And Ultimately Sues Them In England Despite Their Lack Of Any Connections To That Forum

As Forensic News revealed more of Soriano's relationships with individuals and entities tied to Russian election interference activities, Soriano contacted Petitioners through counsel. He threatened to sue Forensic News and its journalists.  *See* Ex. 4 at 53.  And he demanded they cease their reporting.  *See id.* at 32.  Soriano's tactics were not new—he has repeatedly tried to use litigation to silence journalists in the past.  By way of example, Soriano brought libel claims against two investigative journalists and multiple Israeli publications in Israeli court.  *See id.* at 63; Ex. 10 at 2.  He challenged reports that he spearheaded efforts to collect compromising information on police investigators who were investigating then-Israeli Prime Minister Benjamin Netanyahu.  *See* Ex. 4 at 62.  The journalists ultimately prevailed.  *See id.* at 67.  Soriano also sued Twitter for hosting news stories that he perceived as unflattering.  *See id.* at 62.

Despite Soriano's threats, Forensic News stood by its reporting.  It refused to be intimidated.  And it declined either to cease its reporting or to self-censor by taking down its groundbreaking pieces.

On July 14, 2020, Soriano initiated legal proceedings in the High Court of Justice,

Queen's Bench Division, in London.  Doris Decl. ¶¶ 1, 8.  Soriano named as defendants Forensic

News and four contributing journalists (including Mr. Stedman) who are American citizens and

reside in the United States.  *Id.* ¶¶ 4, 7.[3]  He asserted claims for data protection under the General

Data Protection Regulation ("GDPR"), malicious falsehood, harassment, misuse of private

information, and libel.  *Id.* ¶ 8; *see generally* Ex. 15.  Soriano sought not only injunctive relief

but also monetary damages, including "aggravated damages."  *See* Ex. 15 at 29.

Soriano's claims focused primarily on eight publications—including six investigative

articles, one podcast, and a published transcript of the podcast—that Petitioners authored,

published, or participated in between 2019 and 2020.  *See* Ex. 15 at 3–8; Doris Decl. ¶ 8.

According to Soriano, the publications falsely stated or implied (among other things) that he

(i) served as a middleman between Russia and a network of Israeli cyber-intelligence and

surveillance firms; (ii) makes or has made illegal arrangements for Russian oligarchs, including

Oleg Deripaska and Dmitry Rybolovlev; and (iii) acted as an agent for a network of Israeli

cyber-intelligence and surveillance firms, providing private illegal cyber-intelligence and

surveillance services.  *See* Ex. 15 ¶¶ 11–12, 22, 29.

Because Petitioners reside in the United States, Soriano had to apply for the High Court's

permission to serve them in the United States.  *See* Doris Decl. ¶ 9.  Petitioners opposed the

application, arguing that the High Court lacked jurisdiction.  *Id.* ¶ 10.  On January 15, 2021, the

High Court denied Soriano permission to serve Petitioners with his claims for GDPR violations,

malicious falsehood, and harassment.  *See id.* ¶ 11.  The High Court concluded that Soriano

failed to demonstrate a real prospect of success on any of these claims, and that certain claims

---

[3]  Soriano also brought claims against Richard Silverstein, a journalist unaffiliated with Forensic News.  *See* Doris
Decl. ¶ 7.

were "based on little more than wild speculation." Ex. 16 ¶¶ 69, 96–99, 103. But the High Court allowed Soriano to serve Petitioners in the United States with claims for libel and misuse of private information. *See* Doris Decl. ¶ 11; *see also* Ex. 16 ¶¶ 164, 169. The High Court also concluded that the courts of England and Wales were the appropriate forum for trial of these claims. Ex. 16 ¶ 164.

The parties cross-appealed. *See* Doris Decl. ¶ 12. On December 21, 2021, the Court of Appeal affirmed the High Court's decision to let Soriano serve his claims for libel and misuse of private information. *See id.*; Ex. 17 ¶¶ 71–72, 123. It also reversed the High Court's dismissal of the GDPR data protection claim, holding based on the preliminary record that Forensic News' activity fell within the territorial scope of the GDPR. *See* Doris Decl. ¶ 12; Ex. 17 ¶¶ 95, 103–04, 123. The appellate court's ruling on the GDPR claim has been called a "landmark." Ex. 18 at 1. Because Forensic News' connections to the United Kingdom and the European Union are so sparse, commentators have noted that subjecting Forensic News to the GDPR's territorial reach "will have far-reaching implications for all US media corporations."[4] *Id.* As Soriano's counsel proclaimed, the appellate decision "is of historic importance to all US media: if you publish an article about a UK citizen, even if you are physically only based in the US, you may be sued in the UK for breach of data protection laws." Ex. 16 at 1.

Merits proceedings on Soriano's three remaining claims are underway. Those claims include Soriano's assertions that the defendants committed libel, misused private information,

---

[4] The threat these lawsuits pose to First Amendment values has not gone unnoticed by the U.S. Government. On April 19, Congressman Steve Cohen of Tennessee sent an open letter to Secretary of State Blinken calling to ban from the United States several lawyers who engage in "abusive" lawsuits on behalf of oligarchs and the like. *See* Stephanie Kirchgaessner, "U.S. Congressman Urges Biden to Ban Six UK Lawyers for 'Enabling' Oligarchs," the Guardian, April 19, 2022, at https://www.theguardian.com/us-news/2022/apr/19/us-congressman-urges-biden-to-ban-six-uk-lawyers-for-enabling-oligarchs. Soriano's attorney, Shlomo Rechtschaffen, was included on the list of persons whom the Congressman sought to ban. *Id.*

and violated the GDPR.  Doris Decl. ¶¶ 12, 14.  Relevant to this Section 1782 application, the

defendants in the English Defamation Action can defend against Soriano's claims by

demonstrating that the statements contained in their reporting were true and accurate, including

statements connecting Soriano to various cyber-intelligence and surveillance firms.  *See* Doris

Decl. ¶¶ 25, 27.  In English defamation proceedings, the defendant has the evidentiary burden of

proof with respect to a truth defense.  *Id.* ¶ 25.  In addition, Petitioners expect Soriano to testify

at trial in the English Defamation Action and to deny the allegations made in Forensic News'

reporting.  *See id.* ¶¶ 23, 27.  Soriano's credibility will therefore be directly at issue, and

Petitioners will have a greater chance of success if they can persuade the High Court not to

believe Soriano's testimony following vigorous cross-examination.  *Id.* ¶ 27.

Petitioners filed their Defence in the English Defamation Action on March 16, 2022.

Doris Decl. ¶ 15.  They will shortly enter the "disclosure" or discovery phase of the litigation.

*See id.*  They submit this Section 1782 application to aid in their defense.

## III. Petitioners Successfully Apply For Discovery From Former USG Employee Richard Frankel.

On March 31, 2022, Petitioners filed in the U.S. District Court for the Eastern District of

New York their first application under 28 U.S.C. § 1782 for leave to conduct discovery for use in

the English Defamation Proceeding.  *See In re Application of Forensic News and Scott Stedman*,

No. 22 Misc. 993, ECF No. 1.  Petitioners sought discovery from Richard Frankel, a former FBI

agent who left the federal government to work for USG in 2016.  *See id.*, ECF No. 4.  Petitioners

indicated that they were contemplating additional applications under Section 1782 to procure

evidence from other individuals or entities located in the United States.  *Id.* at 10.

On April 4, 2022, Judge Matsumoto granted Petitioners leave to take discovery from Frankel.  *See In re Application of Forensic News and Scott Stedman*, No. 22 Misc. 993, ECF No. 11.

## LEGAL STANDARD

Section 1782(a) provides that a federal district court may order discovery for use in a foreign or international tribunal from persons residing or found in the court's judicial district. Section 1782 was designed "to liberalize the assistance given to foreign and international tribunals."  *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 453 (S.D.N.Y. Oct. 19, 2018), *aff'd sub nom. In re Del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).  Where the information sought is relevant, it is "presumptively discoverable under § 1782."  *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998).  "Consistent with the statute's modest *prima facie* elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application."  *Id.* at 195.

Section 1782(a) has three *prima facie* statutory requirements in order for the Court to award discovery.  *First*, the applicant must be an "interested person" in the foreign proceeding. *Intel*, 542 U.S. at 246.  *Second*, the person from whom discovery is sought must reside in or be found in this district.  *Id.* at 241.  *Third*, the discovery must be for use in a proceeding in a foreign tribunal.  *Id.*  When all three requirements are met, the decision to grant the request rests with the district court, whose discretion is guided by four factors the Supreme Court has identified.  *Id*. at 260–61.  Specifically, in considering whether to grant the requested discovery, this Court should consider: (i) whether the person from whom discovery is requested is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign

11

proceeding and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or burdensome. *Id.* at 264–65.

## ARGUMENT

Petitioners seek discovery from Israeli private investigator Aviram Azari. *See* Ex. 9 at 2. Multiple confidential sources reveal that Azari worked with Soriano for years on various cyber-intelligence and surveillance matters, including for Rybolovlev and Deripaska. Stedman Decl. ¶¶ 4, 6; Ex. 18 at 6. Azari also likely possesses information about Soriano's role as a middleman connecting Israeli cyber-intelligence and surveillance firms with Russian oligarchs. The discovery Petitioners seek in this application will refute Soriano's claims, for example, that Petitioners falsely stated he has "worked directly for Oleg Deripaska and is his close consultant," Ex. 4 ¶ 12.8.1; served as a "debt collector for Dimitri Rybolovlev," *id.* ¶ 12.7.4; and "provid[ed] private illegal hacking and spying services," *id.* ¶ 12.6.3.

Information on any of these matters would directly support the veracity of Petitioners' reporting on Soriano's vast web of connections and work for Russian oligarchs. The discovery would therefore aid Petitioners in defeating the SLAPP suit Soriano filed against them in England—a suit that would not even come close to prevailing in an American court. This Petition satisfies each of the enumerated statutory and discretionary factors relevant to assessing whether to award Section 1782 relief. This Court should grant Petitioners' application in full.

## I. Petitioners' Application Satisfies The Statutory Requirements For Discovery Pursuant To 28 U.S.C. § 1782

Like Petitioners' prior application, this application easily meets the *prima facie* statutory requirements set forth in Section 1782. *See In re Bayer*, 146 F.3d at 193. We take each in turn.

*1. Petitioners Are Interested Persons*.  First, as another court in this District has already found, *see In re Application of Forensic News LLC, et al.*, No. 22 Misc. 993, ECF No. 11, Petitioners are "interested persons" in a foreign proceeding in England.  Specifically, they are defendants.  As the Supreme Court explained in Intel, "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256.  As defendants in the English Defamation Action, Petitioners are "interested person[s]" who can seek Section 1782 discovery.

*2. Target Residing In Or Found In This District.*  Second, Azari resides or is found in the Eastern District of New York.  On April 21, 2022, Azari pleaded guilty to federal charges of wire fraud, identity theft, and conspiracy to commit computer hacking.  *See* Ex. 10 at 1, 5–7; Ex. 11 at 1–2.  Azari is currently incarcerated at MDC in Brooklyn, New York.  *See* Ex. 14 at 1.

As the Second Circuit has explained, "the phrase 'resides or is found' simply constitutes a geographic limitation." *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002).  If an individual is "physically present" in a judicial district, "then for the purposes of § 1782(a), he is 'found' in that district." *Id.* at 180.  Because Azari is physically present within this judicial district, Petitioners have established the second statutory factor.  *See In re Application of Forensic News LLC, et al.*, No. 22 Misc. 993, ECF No. 11.

*3. The Discovery Sought Is For Use In A Foreign Proceeding.*  Petitioners satisfy Section 1782's final statutory requirement because they intend to use this discovery in the proceedings against them in the United Kingdom.  An applicant satisfies the "for use in a foreign tribunal" requirement as long as the discovery sought can "increase her chances of success." *Mees v. Buiter*, 793 F. 3d 291, 299 (2d Cir. 2015).  To meet the "for use in a foreign tribunal" requirement, the applicant need only demonstrate the "ability to inject the requested information

into a foreign proceeding" and that the "requested discovery is something that will be employed with some advantage or serve some use in the proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (internal quotations omitted). There is no requirement that the discovery sought be strictly necessary for the an applicant's case, so long as the materials can "increase her chances of success." *Mees*, 793 F. 3d at 299.

Here, like the discovery sought in their prior application, *see In re Application of Forensic News LLC, et al.*, No. 22 Misc. 993, ECF No. 2 at 13–14, the discovery sought from Azari would plainly increase Petitioners' "chances of success" in that proceeding. In fact, it may well be dispositive of certain claims. *See* Doris Decl. ¶¶ 25, 27. One of Petitioners' primary defenses in the English Defamation Action is that the challenged statements are true. Under English law, "it is a defence to an action for defamation for the defendant to show that the imputation conveyed by the statement complained of is substantially true." *Id.* ¶ 25 n.2 (quoting Section 2 of the English Defamation Act 2013). As noted above, the discovery Petitioners seek in this application will refute Soriano's claims, for example, that Petitioners falsely stated he has "worked directly for Oleg Deripaska and is his close consultant," Ex. 4 ¶ 12.8.1; served as a "debt collector for Dimitri Rybolovlev," *id.* ¶ 12.7.4; and "provid[ed] private illegal hacking and spying services," *id.* ¶ 12.6.3. The discovery will also help Petitioners challenge Soriano's credibility should he be cross-examined at trial. *See* Doris Decl. ¶ 27. Soriano has offered blanket denials of the claims made in Forensic News' reporting. *See* Ex. 4 ¶¶ 22.1–22.7; Doris Decl. ¶ 27. Any facts that damage Soriano's credibility and aid Petitioners' cross-examination will help Petitioners prevail in the ultimate trial in the English Defamation Action.

\* \* \*

In sum, Petitioners again satisfy the three statutory prerequisites to awarding Section 1782 relief.  Petitioners are defendants in a foreign case, and they seek discovery for use in a foreign proceeding from someone found in this judicial district.  This Court should award Section 1782 relief.

## II.    The *Intel* Discretionary Factors All Favor Granting Petitioners' Application.

The four discretionary factors the Supreme Court identified in *Intel* also weigh strongly in favor of granting Petitioners' Section 1782 application.  *See Intel*, 542 U.S. at 264–65; *Mees*, 793 F.3d at 298.  We address each in turn.

*1.  The Discovery Target Is Not A "Participant" In the Foreign Actions.*  The first *Intel* factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding."  *Intel*, 542 U.S. at 244.  That factor weighs in favor of granting discovery here.  Azari is neither a party to nor a participant in the English action.  *See* Doris Decl. ¶¶ 4–7, 22.  And because Azari does not reside in the United Kingdom and "is not a party" to the English proceeding, the High Court does not have jurisdiction to "obtain his testimony [or] any documents sought" from him.  *In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *4 (E.D.N.Y. Dec. 6, 2018); *see* Doris Decl. ¶ 22.  This factor therefore weighs heavily in favor of granting Petitioners' application.  *See In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *4; *see also In re Doosan Heavy Indus. & Constr. Co.*, 2020 WL 1864903, at *2 (E.D.N.Y. Apr. 14, 2020).

*2.  The English Court Is Receptive to U.S. Discovery Assistance.*  The second *Intel* factor assesses "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  "Absent specific directions to the

contrary from a foreign forum, [Section 1782]'s underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995); *see also In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *5 ("The Second Circuit has instructed district courts to be liberal in permitting requested discovery.").  Courts therefore presume that a foreign forum will be receptive to U.S. assistance unless there is "*authoritative proof*" that the foreign forum "would reject evidence obtained with the aid of [S]ection 1782." *In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *5 (emphasis added); *see In re Doosan*, 2020 WL 1864903, at *2 ("[T]he Court has no reason to believe that Egypt . . . is averse to receiving assistance from the United States."); *In re Application of Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) ("[T]here is no evidence that Cyprus has been 'expressly unreceptive' to U.S. discovery.").

The second *Intel* factor clearly favors Petitioners.  The High Court is amenable to accepting evidence procured through U.S. discovery mechanisms.  *See* Doris Decl. ¶¶ 30–33.  In fact, federal district courts have consistently found that "[t]he courts in the United Kingdom . . . are [] receptive to Section 1782 discovery." *In re Batbold*, 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021); *see, e.g., In re JSC BTA Bank*, 2021 WL 6111916, at *4 (S.D.N.Y. Dec. 27, 2021); *In re Application of Patokh Chodiev*, 2021 WL 3270042, at *2 (S.D.N.Y. July 30, 2021); *In re Vale S.A.*, 2020 WL 4048669, at *5 (S.D.N.Y. July 20, 2020); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014).  And "the regularity with which U.S. courts grant similar Section 1782 discovery requests for [English] litigation . . . suggests that there is little potential offensiveness to such grants." *In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *6.

**3.  *No Attempt to Circumvent Foreign Proof-Gathering Restrictions*.**  The third *Intel*
factor examines "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-
gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S.
at 265.  An applicant attempts to "circumvent" foreign proof-gathering restrictions only when it
"uses a § 1782 application to avoid measures that are *intended* to restrict certain means of
gathering or using evidence."  *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th
136, 153 (2d Cir. 2022) (holding that a U.S.-Nigeria treaty did not qualify as such a measure).
This factor similarly weighs in favor of granting Petitioners' discovery application.

Importantly, the third *Intel* factor is "not the same as a foreign discoverability
requirement."  *In re Kreke Immobilien*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013),
*abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).  "Courts may
grant § 1782 applications even where the applicant did not first seek discovery in the foreign
tribunal . . . or where the information sought was not discoverable under the laws of the foreign
country at issue in the foreign proceeding."  *In re BNP Paribas Jersey Tr. Corp.*, 2018 WL
895675, at *3 (S.D.N.Y. Feb. 14, 2018).  Moreover, the requested discovery need not be
admissible abroad.  *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 77 (2d
Cir. 2012).  Rather, when evaluating the third *Intel* factor, courts consider whether the petitioner
seeks the discovery in good faith.  *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at
*8 (N.D.N.Y Aug. 18, 2008).

Here, Petitioners make their discovery requests in a good-faith effort to obtain
information essential to one of their main defenses in the English Defamation Action:
Petitioners' reporting about Soriano was truthful and accurate.  Evidence substantiating that
defense would help Petitioners defeat both the libel and GDPR claims pending against them.

17

Doris Decl. ¶¶ 24–26, 35. Petitioners' discovery request seeks information located in this district regarding work performed by Soriano and his security firm USG—the specific topics covered in Petitioners' reporting and disparaged as "libel" by Soriano. The United Kingdom does not have any law or policy that would bar such relevant evidence. *See id.* ¶ 31. To the contrary, if Azari were subject to the High Court's jurisdiction (and to Petitioners' knowledge he is not), Petitioners could likely have obtained their requested discovery from him in England. *Id.* ¶¶ 17–22. In any event, even if Petitioners could not have obtained this discovery directly in the English proceeding, this factor would still favor Petitioners because "'there is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.'" *Intel*, 542 U.S. at 261 (citing *In re Bayer*, 146 F.3d at 194); *see In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019). Once again, the third *Intel* factor strongly favors Section 1782 relief here. *See In re Application of Forensic News LLC, et al.*, No. 22 Misc. 993, ECF No. 2 at 16–17.

    *4. The Requested Discovery is Relevant and Not Unduly Burdensome.* The fourth *Intel* factor examines whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. That is, the Court should consider factors including "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b).

Here, the discovery sought is unquestionably relevant to the English Defamation Action. It bears directly on the truth and accuracy of Petitioners' reporting—the most critical issue in the English Defamation Action—and on Soriano's credibility. *See* Doris Decl. ¶¶ 24–28, 34–35.[5]

Comparing the parties' relative access to the information also weighs in favor of granting the request. The information sought is currently unavailable to Petitioners but within Azari's control. *See* Ex. 1, Attachment A at 3 (instructing Azari to provide only those documents in his "actual or constructive possession, custody, or control"). The documents Petitioners seek should be accessible to Azari, even while he is in the MDC.[6] *See U.S. Commodity Futures Trading Comm'n v. McCrudden*, 2015 WL 5944229, at *7 (E.D.N.Y. Oct. 13, 2015) (noting that defendant could "utilize a family member or friend or other agent, or perhaps his criminal defense attorney[,] to assist him in collecting the [requested] documents while he was incarcerated"); *see also Puccio v. Sclafani*, 2013 WL 4068782, at *4 (S.D. Fla. Aug. 12, 2013) (requiring incarcerated party to "make a good faith effort to obtain all responsive documents"). Nor does the fact of Azari's imprisonment alone make Petitioners' deposition request "unduly burdensome." As other courts have previously held, courts "should grant leave to depose an incarcerated witness unless the objecting party shows that: (1) the deposition would be unreasonably cumulative or duplicative; (2) the party seeking the deposition has had ample opportunity to obtain the information sought; or (3) the burden or expense of the deposition

---

[5]   That any ultimate English judgment will be unenforceable in the United States under the SPEECH Act does not render discovery inappropriate. *Goenechea*, 2016 WL 560689, at *3 (granting Section 1782 application even though ultimate foreign judgment likely unenforceable pursuant to the SPEECH Act). The SPEECH Act only affects judgments enforced *in* the United States. Petitioners have a right to attempt to defend the English Defamation Action to prevent the imposition of a judgment that might be enforceable elsewhere.

[6]   Because Azari is "confined in prison," Petitioners must obtain leave of court to notice his deposition. *See* Fed. R. Civ. P. 30(a)(2). Rule 30 specifies that "the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)." This inquiry thus overlaps with the fourth *Intel* factor. Because the fourth *Intel* factor weighs strongly in Petitioners' favor, leave of court is also appropriate.

outweighs its likely benefit." *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 578–79 (N.D. Tex. 2002); *see also Gardner v. Kenton Cty. Detention Ctr.*, 2012 WL 13128768, at *1 (E.D. Ky. 2012) (same).[7]  Azari likely possesses unique information about Soriano's cyber-intelligence and surveillance activities that cannot be obtained from or duplicated by other sources.  And because the request is tailored to information relating to specific clients and associates of Soriano, it is not unduly burdensome.  *See* Ex. 1, Attachment A at 6; *In re Doosan*, 2020 WL 1864903, at *2 ("[T]he discovery sought is neither burdensome nor intrusive, as it targets only documents and testimony clarifying the nature of the business relationship between Liberty Maritime and KGLPI.").

In contrast, to deny Petitioners' motion would place an enormous burden on their shoulders.  Under English law, parties accused of defamation bear the burden of proving the truth of their statements.  This is the opposite of American evidentiary presumptions—particularly in defamation cases, where plaintiffs in New York must prove falsity by clear and convincing evidence.  *See* N.Y. Civ. Rights Law § 76-a.  To shoulder this burden, Petitioners must present evidence proving the truth of their statements and debunking Soriano's blanket denials.  Doing so requires procuring evidence from third parties like Azari.  Azari likely possesses unique information about the cyber-intelligence and surveillance activity Soriano undertook on behalf of Rybolovlev, Deripaska, and others—information that Petitioners cannot obtain from other sources and that is critical to their defense in the English Defamation Action.  *See supra* 13–14.

---

[7]  Although these courts were considering discovery requests under Federal Rule of Civil Procedure 30 rather than Section 1782, the "undue burden" analysis is the same.

For these reasons, the fourth *Intel* factor also strongly weighs in Petitioners' favor.[8]

\* \* \*

Each of the four discretionary *Intel* factors weighs strongly in favor of granting Petitioners' application.  Azari is not a party to the English Defamation Action, English courts are receptive to U.S. discovery assistance, Petitioners do not seek to circumvent any English discovery restrictions, and the discovery sought is neither unduly burdensome nor intrusive. This Court should award Section 1782 relief.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully requests that the Court grant this Application in its entirety and grant Petitioners leave to serve on Aviram Azari a subpoena substantially similar to that attached as Exhibit 1 to the Champion Declaration.

---

[8]   In any event, the Second Circuit has instructed that even if "a district court finds that a discovery request is overbroad, before denying [a Section 1782] application it should ordinarily consider whether that defect could be cured through a limited grant of discovery." *Mees* 793 F.3d at 302; *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.").  Consequently, any doubts this Court has as to the scope of the discovery can be addressed in the context of a motion to compel or quash, rather than in this application seeking leave merely to serve Petitioners' proposed subpoena.

Dated:   May 25, 2022

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Anne Champion*
Anne Champion
Lee R. Crain
Erica Sollazzo Payne
Cate McCaffrey
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone: (212) 351-3883
Facsimile:  (212) 351-5303

*Counsel for Petitioners Forensic News LLC and
Scott Stedman*

22